**UNITED STATES of America,**
**Plaintiff,**

v.

**Charles A. RYNO, Defendant.**

**Cr. No. 24087–CD.**

United States District Court
S. D. California, Central Division.

April 18, 1955.

686

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., by Louis Lee Abbott and Leila F. Bulgrin, Asst. U. S. Attys., Los Angeles, Cal., for the U. S.

Lillian Stevens Stegman, Los Angeles, Cal., for defendant.

TOLIN, District Judge.

Defendant is accused in a two-count Indictment each count of which concerns the same United States Treasury check. Count One charges defendant did wilfully and knowingly forge the endorsement of the payee on the check. The Second Count charges that he wilfully and knowingly uttered and published as true the check bearing the forged endorsement and that this was done with intent to defraud the United States. The questions herein treated arise upon a Court trial, a jury having been expressly waived.

The payee of the check is the lawful wife of defendant. Over objection the Court permitted the wife to testify [1] that

1. The Court allowed the wife to testify out of order, early in the trial and before the *corpus delicti* had been established. While ordinarily this should not be done, fully prepared argument on the question of the privilege was not immediately available, the wife was seriously ill and the trial was being held in a District away from the State of her residence. (Trial was had in California. Wife re-sided in Colorado.) The Court thought that probable cause existed to believe that there would be an offer of actual evidence of circumstances which would make acceptance of her testimony proper. The defendant had once pleaded Guilty to the offenses charged and the Probation Officer's report had recited a factual situation which the prosecutor offered to prove at the trial, asking only

she had not authorized her husband to endorse the check. A motion to strike the wife's testimony on the ground that the husband-wife privilege forbad admitting it is under submission together with the submission of the entire case.

■ Briefly stated, the evidentiary point is that a spouse is not allowed to testify in a criminal prosecution of his/her spouse unless the one against whom the testimony is to be given consents. The witness Hazel R. Ryno was sworn and testified that she is now, and on the dates specified in the Indictment was, the wife of defendant. Counsel for Mr. Ryno then objected to her giving further testimony and based the objection on the common-law privilege of a husband to not have his wife testify against him in a criminal case without his consent.[2] Defendant Ryno withheld

that the sick wife be heard out of order so she could leave the Court room. She fainted twice during her examination and, in obvious distress, was carried from the Court room to a medical facility but this was not done until after the close of cross-examination.

2. This was originally a matter of incompetency of the wife to be a witness. Wesoky v. United States, 3 Cir., 175 F. 333, 99 C.C.A. 121; Graves v. United States, 150 U.S. 118, 14 S.Ct. 40, 37 L. Ed. 1021. The rule that the wife was not a competent witness against the husband was further recognized in Paul v. United States, 3 Cir., 79 F.2d 561. In Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, the sole issue before the Supreme Court was "whether in a federal court the wife of the defendant on trial for a criminal offense is a competent witness in his behalf. Her competency to testify against him is not involved". In reaching its determination that the wife was not incompetent as a witness for the defendant, the Supreme Court commented on and quoted from the earlier decision in United States v. Reid, 12 How. 361, 13 L.Ed. 1023. This combination of quotation and comment includes " * * * 'We do not feel ourselves, therefore, precluded by that case from examining this question in the light of general authority and sound reason.' The alleged incompetency of the codefendant was rested upon two reasons, first, that he was interested, and, second, that he was a party to the record, the basis for the exclusion at common law being fear of perjury. 'Nor,' the court said, 'were those named the only grounds of exclusion from the witness stand. Conviction of crime, want of religious belief, and other matters were held sufficient. Indeed, the theory of the common law was to admit to the witness stand only those presumably honest, appreciating the sanctity of an oath, unaffected as a party by the result, and free from any of the temptations of interest.

The courts were afraid to trust the intelligence of jurors. But the last fifty years have wrought a great change in these respects, and to-day the tendency is to enlarge the domain of competency and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion. This change has been wrought partially by legislation and partially by judicial construction.' Attention then is called to the fact that Congress in 1864 had enacted that no witness should be excluded from testifying in any civil action, with certain exceptions, because he was a party to or interested in the issue tried; and that in 1878 (c. 37, 20 Stat. 30 [28 U.S.C.A. § 632]) Congress made the defendant in any criminal case a competent witness at his own request. The opinion then continues. ([Benson v. United States, 146 U.S. 325] at page 337, 13 S.Ct. 60, at page 64 [36 L.Ed. 991]):

" 'Legislation of similar import prevails in most of the States. The spirit of this legislation has controlled the decisions of the courts, and steadily, one by one, the merely technical barriers which excluded witnesses from the stand have been removed, till now it is generally, though perhaps not universally, true that no one is excluded therefrom unless the lips of the originally adverse party are closed by death, or unless some one of those peculiarly confidential relations, like that of husband and wife, forbids the breaking of silence.

" '* * * If interest and being party to the record do not exclude a defendant on trial from the witness stand, upon what reasoning can a codefendant, not on trial, be adjudged incompetent?'

"That case was decided December 5, 1892. Twenty-five years later this court had before it for consideration the case of Rosen v. United States, supra [245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406]. Rosen had been tried and convicted in a federal district court for conspiracy. A person jointly indicted with Rosen, who

consent. The wife was then permitted to testify and a motion was made, upon which ruling has been reserved, that all her testimony except that relating to marital status be stricken. The important and damaging testimony of the wife was to the effect that she had not authorized anyone to sign her name to the check in question and specifically that she had not authorized defendant husband to endorse it. This went to the very heart of the case for upon the trial of a defendant accused of the forgery of a check by signing the name of another thereto, the prosecution must prove that the defendant was not authorized to sign such name, and until this proof is made, it is not shown to be a false instrument, and the defendant is not put to his proof at all.[3]

■ Although proof was received out of order, the Court finds that even if the husband-wife incompetency to testify in a criminal case against the other spouse still exists, exceptions to the rule also exist and this case includes one of them.

Here a female witness testified that she had been living in California during the past several years in a husband-wife relationship with the defendant. (There never was any ceremonial or licensed marriage between defendant and this witness.) She had borne two children. Defendant was their father. Defendant had introduced her to Military officials as his wife and he had generally held her out to be his wife. It was abundantly apparent to the Court that during the past several years defendant and this witness had been living in California as husband and wife and as a corollary to this situation, he had not been living in the marital relationship with his legal wife whom he had left in Colorado.

■ It is elementary law that when a husband deserts his wife, his abandonment of her not only creates a cause of action in her favor for divorce or separate maintenance but deprives him of many matrimonial privileges. His commission of adultery has the same effect. When a man so far abandons the obligations of marriage as to leave his wife and enter into a long term adulterous relationship with another, even habitually holding out the paramour as his wife, it would be unrealistic for a court to say that to permit the wife to testify in a criminal case against him would wreck the marriage and should not be permitted. By abandonment of the marital duties and privileges, such a husband has also abandoned any right to assert a privilege to have his wife barred from giving testimony in a prosecution against him. Speaking of the claim of privilege, Circuit Judge Clark, in United States v. Walker, 2 Cir., 176 F.2d 564, 569, said:

> "Admittedly the common-law principle that 'a wife cannot be produced either for or against her husband, "quia sunt duae animae in

had been convicted upon his plea of guilty, was called as a witness by the government and allowed to testify over Rosen's objection. This court sustained the incompetency of the witness. After saying that while the decision in the Reid case had not been specifically overruled, its authority was seriously shaken by the decisions in both the Logan [Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429] and Benson cases, the court proceeded to dispose of the question, as it had been disposed of in the Benson case, 'in the light of general authority and sound reason.'

" 'In the almost twenty [twenty-five] years,' the court said [245 U.S. at pages 471, 472, 38 S.Ct. at page 150], 'which have elapsed since the decision of the Benson case, the disposition of courts and of legislative bodies to remove disabilities from witnesses has continued, as that decision shows it had been going forward before, under dominance of the conviction of our time that the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury or by the court, rather than by rejecting witnesses as incompetent, with the result that this principle has come to be widely, almost universally, accepted in this country and in Great Britain."

3. People v. Lundin, 117 Cal. 124, 48 P. 1024.

carne una," ' Co.Litt., f. 6b, 1628, is gone; indeed, there is none now so poor as to do it reverence. But I think we tend to overlook the fact that our duty to interpret 'the principles of the common law' in the light of 'reason and experience,' Federal Rules of Criminal Procedure, rule 26, compels us to discover anew a rational rule, and that a rule looking at least halfway toward the past is itself a new embodiment of the law without, however, the gain of being a real adjustment to modern life. In this instance, therefore, I prefer the forthright approach of a great American judge, McDermott, J., speaking for a unanimous court in Yoder v. United States, 10 Cir., 80 F.2d 665, and placing his decision by preference on this very point. (Citations)

"For present purposes, however, the issue may be narrowed, as it is in the last paragraph of the opinion. For we really have to do with the exception, recognized even at common law, of a wife's testimony as to her husband's crimes against herself. Since it is said quite properly that this exception 'probably extends' to the privilege against the admission of confidential communications, 8 Wigmore on Evidence, § 2338, 3d Ed. 1940, I assume no special note need be taken of the defendant's letter of March, 1947, beyond the wife's testimony generally—even if the lack of exception to this bit of evidence is overlooked. And that this was a crime more against the wife's property than her person does not seem to be stressed and is not ground for a sound distinction. 8 Wigmore on Evidence, § 2239, 3d Ed.1940; A.L. I. Model Code of Evidence, Rule 216(c). Hence we find exclusion here limited to the single point that the wife was not the victim of the frauds for which the defendant was being tried. I submit that this is not a necessary deduction, or one grounded in 'reason and experience,'

from that very vague and troublesome concept so criticized by Wigmore, op. cit., of 'necessity.' For no attempt is ever made actually to determine whether the wife's testimony is really necessary to the prosecution's (not her) case, as of course none can well be made. Often the testimony of the victim herself may not be absolutely necessary for conviction; on the other hand, testimony of successive defraudings of innocent women, as here, may be the very evidence to place the case beyond dispute. Why should we not face it boldly that this vague label is but one of those judicial flourishes indulged in by judges to cover up a retreat from the impossible position to which Lord Coke's doctrine would otherwise have pushed them? (Citations)

"Should we not therefore turn to the only solid ground—if any—for the exclusion, namely, the promotion of marital peace, etc.? Wigmore, op. cit. But then we must recognize that the reason for the exclusion is now gone entirely, put an end to by the husband's acts * * *".

Although this quotation is from a dissent, it appears to be harmonious with Rule 26 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.:

"In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an act of Congress or by these rules. The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the *courts of the United States in the light of reason and experience.*" (Emphasis supplied.)

Even before that rule was adopted the courts sometimes permitted a wife to testify as a prosecution witness in cases wherein her husband was a defendant. See United States v. Mitchell, 2 Cir.,

137 F.2d 1006, 1007, where the following appears:

"In considering the admissibility of the wife's testimony, distinction must be made between a general privilege prohibiting testimony by one spouse against another and the special privilege as to confidential communications. The latter seems quite thoroughly recognized and approved in this country, 8 Wigmore on Evidence, 3d Ed.1940 §§ 2332–2341, whereas the former, while also widely recognized except where modified by statutes or limited by exceptions, has been strongly criticized as of obscure origin, uncertain rationalization, and unfortunate results in limiting judicial search for the truth * * *".

See, also, United States v. Graham, D.C., 87 F.Supp. 237; Kerr v. United States, 9 Cir., 11 F.2d 227; and United States v. Lutwak, 7 Cir., 195 F.2d 748.

The prosecutor did not ask Mrs. Ryno any questions relating to communications between husband and wife. Such communications were privileged and that privilege has been fully respected in this case.

 It has been argued by defense counsel that the crime charged was not one against the person of the wife in the sense that the Mann Act prosecutions herein referred to were. This is true in that the impact of the offense upon the wife was different, but it cannot be correctly said that the wife was not a victim of the crime. True, it was someone else who had to make good the financial loss suffered by honoring of the forged check, but it must be borne in mind that the check was one issued by the Government for a special purpose which included an immediate benefit to the wife, the full enjoyment of which was interfered with in a very real sense.

Defendant was an Airman in the Armed Forces of the United States. Airmen are not paid large wages or salaries. Recognizing the social necessity of providing some assistance for the subsistence of servicemen's dependents while the wage earner serves his Government at a low financial recompense, the Congress adopted the Servicemen's Dependents Assistance Act of 1949 [4] which entitles, indeed makes mandatory, the allotting of some portion of the serviceman's wage to certain dependents, including the wife. To the serviceman's contribution there is added an increment by the Government so that the dependent may have a regular stipend for subsistence. To interfere with this by forging the wife's endorsement, cashing her check and using the money to finance an adulterous life, is certainly an interference with the wife's rights of as high an order as usually exists in Mann Act cases where the wife has ordinarily become a prostitute before there is interstate travel. It is also a fraud on the Government which each year pays millions in excess of the serviceman's wage, all for the special purpose of providing current subsistence funds for the indicated dependents. The Government and the dependent each have a right to have the integrity of the Government check respected by omission therefrom of forgeries.

 Defendant also contends that since allotment allowances for dependents are made by the United States in consideration of the husband's serving in the Armed Forces, they are compensatory in nature and come into the marriage as earnings of the husband. Statutes of Colorado have been cited to show that in that State the husband's earnings are his separate property, subject to his control. He contends that therefore he was dealing rightfully with his own property.

The particular check was issued by the Government for a special purpose. It was never the purpose of a serviceman's allotment that he be thereby personally enriched. It was the purpose of the Gov-

---

4. Public Law 771, 81st Congress; Title 50 U.S.C.A.Appendix, §§ 2201–2216. See also Chapter 5, Class Q Allotments, Air Force Manual.

ernment to provide *currently* for the regularly recurring subsistence needs of the serviceman's family. When defendant intercepted the check which was payable to his wife, and signed her name as endorser without her authority and for the purpose of receiving the funds for his personal use, he thereby acted fraudulently toward the Government and the wife, as well as all persons through whose hands the check would pass, and he committed the crimes charged in the Indictment.

The motion to strike the testimony of Hazel R. Ryno (the wife) is denied.

The Court finds defendant Guilty as charged in the Indictment.