UNITED STATES, Appellee

v

HOWARD M. WOOLDRIDGE, Sergeant, U. S. Army, Appellant

10 USCMA 510, 28 CMR 76

No. 12,638

Decided July 2, 1959

*Miss Madeline DeFina* argued the cause for Appellant, Accused.

*First Lieutenant George J. Miller* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. Mc-Conaughy, Major Thomas J. Nichols,* and *First Lieutenant Paul R. Walsh.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The husband-wife relationship provides the basis for this appeal. The Government subpoenaed the accused's wife as a prosecution witness. Over defense counsel's objection and despite her later assertion that she did not "want to say anything" against her husband, the accused's wife testified against him. Her testimony gives substantial support to the findings of guilty on four of the five charges of which the accused was convicted. The accused challenges the correctness of the

law officer's ruling which permitted his wife to testify against him.

According to the wife's testimony, she married the accused in October 1942. As his wife, she received a "Class Q Allotment" from the United States Army. See 37 USC § 252. For three years, allotment checks were received at 2513A Bacon, St. Louis, Missouri. She did not receive a check for January 1957. At that time the accused was stationed at Fort Devens, Massachusetts. "Several times" at un-

511

disclosed periods he had written to her advising that he "wanted . . . [her] to come" to Fort Devens. She refused. In January or February 1957, he wrote to advise her she "wouldn't get any more allotment checks." She was in Florida, but because her stay was temporary she "didn't bother about it." In April, the accused "found out . . . [she] was back in St. Louis" and communicated with her. She asked him for "my checks" and was informed that he had them. She told the accused she had a two-week vacation and "might come and visit him." He said he would send her the checks "by telegram." When she did not receive them the next day she wrote and "asked about them."

Photostatic copies of four United States Treasury checks, each in the amount of $157.10, dated, respectively, January 31, February 28, March 31, and April 30, 1957, were admitted into evidence. The payee in each check was Wylma Wooldridge; the listed address was HS Company 20th Engineer Battalion, Fort Devens, Massachusetts. From the checks it may be inferred they were issued for a Class Q Allotment provided by the accused. On the reverse side, each check was indorsed in the name of Wylma Wooldridge; underneath the indorsement is the accused's name and on three checks his serial number. In addition, there is a Massachusetts bank indorsement indicating the January check passed through the bank on February 19; the February check passed through on March 8; the March check cleared on April 15; and the April check went through on May 7. Mrs. Wooldridge testified that none of the indorsements were made by her or with her authority. Specifically, she did not give the accused authority to sign her name. She further testified she was "sure" both signatures were made by her husband. Additionally, a provost marshal investigator testified the accused told him he had written permission from his wife to sign the allotment checks but he "couldn't produce it." On this

testimony, the accused was convicted of four charges of forgery in that he falsely made the signature of his wife, with intent to defraud, in violation of Article 123, Uniform Code of Military Justice, 10 USC § 923. He was convicted of another unrelated offense, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921.

At common law, one spouse could not testify for or against the other except in the case of a crime against the person of the witness-spouse. As wives gained recognition as separate jural persons, gradual changes in the rule were effected, some by express statutory provision and others by the courts in the exercise of reason and experience. Funk v United States, 290 US 371, 78 L ed 369, 54 S Ct 212; see also Rule 26, Federal Rules of Criminal Procedure. Some modern jurists and legal scholars have characterized the rule as "out worn,"[1] the "merest anachronism,"[2] and a "sentimental relic."[3] But a case can be made to support the policy limiting incursion of the State into the family relationship, even in the light of present-day husband and wife relations. In any event, as recently as last year, the United States Supreme Court held that a wife could not testify against her husband in the prosecution of an offense which did not involve an injury to her. The Court said it could not subscribe to the idea that an exclusionary rule based on the persistent instincts of several centuries should now be abandoned. Hawkins v United States, 358 US 74, 79, 3 L ed 2d 125, 79 S Ct 136 (1958); cf. Wyatt v United States, 263 F2d 304 (CA 5th Cir) (1959).

Some years ago the Court of Appeals for the Third Circuit held that a husband could not testify against his wife in a prosecution in which she and another person were charged with forging his name to a Government check. Paul v United States, 79 F2d 561 (CA3d Cir) (1935). State courts have held to the same effect in other instances of forgery, although in each of those states

---

[1] Herman v United States, 220 F2d 219, 226 (CA 4th Cir) (1955); see also Yoder v United States, 80 F 2d 665 (CA 9th Cir) (1935).

[2] Wigmore, Evidence, 3d ed, § 2228.

[3] Comment, Rule 23 (2), Uniform Rules of evidence.

a statute provided that one spouse could testify against the other for any offense committed by one against the other. Meade v Commonwealth, 186 Va 775, 43 SE2d 858; Molyneux v Willcockson, 157 Iowa 39, 137 NW 1016; see also People v Ernst, 306 Ill 452, 138 NE 116; Ex parte Dickinson, 132 SW2d 243 (Mo). In fact, one commentator has observed that the courts are in "complete accord" that forgery of the signature of a spouse is not an offense against the person so as to allow the spouse whose name has been forged to testify against the other. Annotation, 11 ALR2d 646, 648. However, the Government contends these authorities are inapplicable and that the case is controlled by the Manual for Courts-Martial and other Federal decisions.

Paragraph 148e of the Manual provides in part as follows:

"Husband and wife are competent witnesses in favor of each other. Although husband and wife are also competent witnesses against each other, the general rule is that both are entitled to a privilege prohibiting the use of one of them as a witness (sworn or unsworn) against the other. This privilege does not exist, however, when the husband or wife is the individual or one of the individuals injured by the offense with which the other spouse is charged, as in a prosecution for an assault upon one spouse by the other, for bigamy, polygamy, unlawful cohabitation, abandonment of wife or children or failure to support them, for using or transporting the wife for 'white slave' or other immoral purposes, or for forgery by one spouse of the signature of the other to a writing when the writing would, if genuine, apparently operate to the prejudice of such other."

The Government maintains that under the Manual provision injury to the property, as well as any injury to the person, brings the case within the exception rather than the rule. Thus, it argues, that "recognition of the wife as an owner and manager of property separate from the husband requires the recognition that injury to . . .

[her] property is an injury to her." This argument assumes the allotment is the sole and separate property of the wife. However, that fact is not at all clear from the statute providing for the allotment.

The Dependents Allowance Act of 1942, which preceded the present statute, provided that "the dependent . . . shall be entitled to receive a monthly family allowance." 56 Stat 381. The present statute, however, is to the effect that "members of the uniformed services entitled to receive basic pay shall be entitled to receive a basic allowance for quarters." 37 USC § 252. Whether the change in language is significant need not give us pause. The fact of the matter is that over 50 per cent of accused's allotment is taken from his pay and the remainder is contributed by the Government. It has been held, even under the former statute, that the payment is not a gift to the wife. United States v Elfer, 246 F2d 941 (CA9th Cir) (1957). It has also been held that the allotment payment may be used to satisfy the husband's obligation to pay alimony under a divorce decree. Kipping v Kipping, 186 Tenn 247, 209 SW2d 27.

In community property states, the allotment constitutes property of the marital community, not the separate and exclusive property of the wife. Sterrett v Sterrett, 228 SW2d 341 (Tex); United States v Elfer, supra. Some Federal courts have indicated that the serviceman is personally obligated to the Government for the return of improper allotment payments. United States v Johnson, 166 F Supp 640 (MD NC); United States v Robbins, 151 F Supp 3 (ED Wis); United States v Teehan, 140 F Supp 465 (ED NY); cf. United States v Elfer, supra.

Congress did not define the nature of an allotment check as the separate property of either the serviceman or his dependent. Certainly if, as the Federal courts indicate, he is personally liable to the Government for the return of improper payments, he has more than a passing interest in the check. If he has some sort of vested interest in the allotment, it may be that he has implied

authority to change the check to cash and use the proceeds for the "special purpose" for which the check is intended. See United States v Ryno, 130 F Supp 685, 690 (SD Calif), affirmed 232 F2d 581 (CA9th Cir) (1956). As observed in United States v Sonnenberg, 158 F2d 911, 914 (CA3d Cir) (1946):

"... Authority to do an act for another which will bind that other does not necessarily come from express words on the part of the person to be bound. Authorization may come as a necessary implication from the facts."

The record of trial shows that "several times" the accused requested his wife to come to his new station in Massachusetts but she refused. However, the husband is still head of the household, and he is entitled to establish a new place for the family domicile, at least at reasonable places and under reasonable circumstances. It may be, therefore, that under State law[4] as a person having an interest in the check, the accused had implied authority to change the check into cash and to use the proceeds for the establishment and maintenance of a home. See Licker v Gluskin, 265 Mass 403, 164 NE 613. In that event no injury to the wife results from the signing of her name without her express authority.

The Federal cases relied upon by the Government present different factual situations. In Herman v United States, 220 F2d 219 (CA4th Cir) (1955), the narrow point in issue was whether the defendant was entitled to dismissal of the indictment because his wife had testified before the grand jury. Cf. Costello v United States, 350 US 359, 100 L ed 397, 76 S Ct 406 (1956). Between the time of her testimony before the grand jury and the trial, the marriage was annulled. In addition, the property obtained by the false and fraudulent representations of the defendant was concededly the sole and separate property of the wife.[5] Similarly, in United States v Graham, 87 F Supp 237 (ED Mich), the property belonged exclusively to the wife. Here also the court emphasized the fact that the evidence established the defendant had "inveigled" the wife into the marriage, obtained her property by deceit, and deserted her two weeks after the ceremony. The court found that the relationship was nothing but a "mask and device to cover the fraud." Under the circumstances, the court held that it would "penetrate the fiction that there was any marital status to preserve." United States v Graham, supra, page 241.

United States v Ryno, supra, involved an allotment check of the kind in issue here. The Government charged the defendant with forging the indorsement of the payee-wife with the intent to defraud the United States and with uttering an instrument with a forged indorsement with the intent to defraud the United States.[6] As in this case, the wife was allowed to testify that she did not authorize her husband to sign her name to the check.[7] The evidence

---

[4] In the absence of Congressional declaration, the nature of the husband's interest in the allotment check would seem to be determined by State law. See Commissioner v Stern, 357 US 39, 2 L ed 2d 1126, 78 S Ct 1047 (1958); United States v Elfer, 246 F 2d 941 (CA 9th Cir) (1957); cf. United States v Ryno, 130 F Supp 685 (SD Calif), affirmed 232 F 2d 581 (CA 9th Cir) (1956).

[5] It may be questioned whether the offenses of transporting property obtained by fraud in interstate commerce and conspiracy are offenses against the spouse, although the property is that of the wife. Cf. Molyneux v Willcockson, 157 Iowa 39, 137 NW 1016; Paul v United States, 79 F 2d 561 (CA 3d Cir) (1935). Possibly the holding may be sustained on the ground that the relation was merely a sham and a fraud. Lutwak v United States, 344 US 604, 97 L ed 593, 73 S Ct 481.

[6] See Footnote 5.

[7] On appeal, the Court of Appeals said it "need not determine whether the court erroneously received the testimony of appellant's wife." United States v Ryno, 232 F 2d 581, 584 (1956). For the purposes of this case, we can disregard the limiting effect of this holding on the ruling of the trial judge.

showed that for several years the defendant and another woman lived in an adulterous relationship and held themselves out to others, including military officials, as husband and wife. In the course of their relationship they had two children. Considering this evidence, the trial judge said:

". . . When a man so far abandons the obligations of marriage as to leave his wife and enter into a long term adulterous relationship with another, even habitually holding out the paramour as his wife, it would be unrealistic for a court to say that to permit the wife to testify in a criminal case against him would wreck the marriage and should not be permitted. By abandonment of the marital duties and privileges, such a husband has also abandoned any right to assert a privilege to have his wife barred from giving testimony in a prosecution against him."

The trial judge also found from the evidence that the defendant used "the money to finance" his adulterous life. He concluded that such use was in fraud of the "special purpose" of providing for subsistence of the "serviceman's family" for which the check was issued.

In this case there is no evidence of the use made of the proceeds. The fact that the accused "several times" requested his wife to come to Fort Devens and that he indorsed the checks in his own name seem to indicate he used the proceeds of the check for establishment and maintenance of a family home. But, on the other hand, the fact that he apparently lied to his wife about his possession, and to the Criminal Investigation Detachment agent about his authority, tends to show he cashed the checks for other purposes. Certain matters in the allied papers tend to show the proceeds might have been used to sustain an extramarital relationship similar to that in the *Ryno* case. However, as far as the record of trial itself is concerned there is insufficient evidence to show that the accused's action in signing his wife's name to the allotment check resulted in injury to her. In the absence of such a showing, the wife's testimony is inadmissible, even under the broad provisions of the Manual and the dicta of the cases relied upon by the Government. The law officer, therefore, erred in admitting her testimony. Since her testimony is crucial, the findings of guilty and the sentence must be set aside.

While the case was under advisement, appellate defense counsel moved to strike certain allied papers filed by the Government and to file other exhibits on behalf of the accused. In view of our disposition on the merits, we need not consider the motions.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General for reference to the board of review. In its discretion, the board of review may direct a rehearing on the specifications of Charge I and the sentence, or set aside the findings of guilty of the specifications and the Charge, and reassess the sentence on the basis of the findings of guilty of the Additional Charge.

FERGUSON, Judge (concurring in the result):

I concur in the result.

I agree with the conclusion of the principal opinion that an enlisted member of the military service has such a property interest in a Class Q allotment check, designed to pay a basic allowance for quarters, that the endorsement thereon of his wife's signature does not constitute an injury to her upon which the competency of her testimony over his objection may be predicated. I premise my concurrence upon the member's contribution to the allowance represented by the instrument; the clear intent of Congress that he be "entitled to receive a basic allowance for quarters," 37 USC § 252, 50 USC App § 2204; and the fact that the Army recognizes such property interest in him by seeking initially to collect erroneous overpayments from the pay and allowances to which he may otherwise be entitled. United States v Johnson, 166 F Supp 640 (MD NC) (1958); United States v Robbins, 151 F Supp 3 (ED

Wis) (1957); United States v Teehan, 140 F Supp 465 (ED NY) (1956); Army Regulation 37–104, paragraph 5–95. Whether that property interest is also sufficient to bar the accused's conviction of forgery of such an allotment check is not now before us.

I disagree, however, with the implication of the principal opinion that the question of an injury to the wife's interest should be determined by State law. The competency of a witness is a matter involving the law of evidence and is solved by reference to the law of the forum. Pritchard v Norton, 106 US 124, 1 S Ct 102, 27 L ed 104. Nor should we burden law officers with a rule requiring them to search out variant precedents and to decide competency according to the capricious factor of a spouse's domicile. See United States v Bryson, 3 USCMA 329, 12 CMR 85. Cf. United States v Roark, 8 USCMA 279, 24 CMR 89, in which the problem was discussed in connection with the admissibility of juvenile court proceedings for impeachment purposes.

I therefore concur in the reversal and remand of the instant case.

LATIMER, Judge (dissenting):

I dissent.

The majority holds that the accused's wife was not an injured party and therefore that her testimony was erroneously admitted into evidence against him. I cannot agree. And because the far-reaching effect of the Court's decision will make it impossible for the services to convict a serviceman for forging his dependent's allotment check, I deem it advisable to make my own position clear.

Article 36(a), Uniform Code of Military Justice, 10 USC § 836, provides:

"(a) The procedure, including modes of proof, in cases before courts-martial, courts of inquiry, military commissions, and other military tribunals may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recog-

nized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter."

Under the authority thereby granted to him, the President prescribed paragraph 148e of the Manual for Courts-Martial, United States, 1951, which is pertinent to the problem with which we are now concerned. The rule of evidence there set forth states:

"Husband and wife are competent witnesses in favor of each other. Although husband and wife are also competent witnesses against each other, the general rule is that both are entitled to a privilege prohibiting the use of one of them as a witness (sworn or unsworn) against the other. This privilege does not exist, however, when the husband or wife is the individual or one of the individuals injured by the offense with which the other spouse is charged, as in a prosecution for an assault upon one spouse by the other, for bigamy, polygamy, unlawful cohabitation, abandonment of wife or children or failure to support them, for using or transporting the wife for 'white slave' or other immoral purposes, or for forgery by one spouse of the signature of the other to a writing when the writing would, if genuine, apparently operate to the prejudice of such other."

Reference to my opinion in United States v Leach, 7 USCMA 388, 22 CMR 178, will disclose why I am satisfied we are not free to disregard the above-quoted rule. To be sure, the United States Supreme Court has since decided Hawkins v United States, 358 US 74, 3 L ed 2d 125, 79 S Ct 136 (1958), but that case does not militate against the position I take. Quite to the contrary, I believe it supports my concepts, for the Court there expressly indicated that either Congress or the Supreme Court could "change or modify the rule." Certainly—if indeed the military rule does differ from that recently announced by the Supreme Court—Congress has authorized the difference, for the evidentiary rule prescribed by the President in the Manual is in imple-

mentation of the Code as expressly directed by Congress. Moreover, the Supreme Court also stated it could change the rule under its rule-making power and again, insofar as military courts are involved, Congress has vested that authority in the President.

In United States v Leach, supra, I discussed at length my views on a very similar problem. Briefly, then, as I there indicated, when I apply the foregoing rule, I reach the following conclusions. Both husband and wife are competent witnesses, either for or against one another. However, generally both the party-spouse and the witness-spouse are entitled to a privilege prohibiting adverse testimony. But the general rule is subject to an exception, for that privilege does not exist when the husband or wife is injured by the offense with which the other is charged. And from this it follows naturally that in those instances where there is no privilege, a witness-spouse, just as any other ordinary witness, may be compelled to testify even though he may prefer to escape doing so. And, parenthetically, I point out that these conclusions are not at all inconsistent with *Hawkins,* supra. As was recently observed in Wyatt v United States, 263 F 2d 304 (CA 5th Cir) (1959), the Supreme Court in *Hawkins* expressly noted the exception applicable where the witness-spouse was injured and, accordingly, the Court of Appeals affirmed Wyatt's conviction under the Mann Act, on the basis "that in Hawkins the wife was not the victim and here she is. That distinction is vital." 263 F 2d 304, 308. Moreover, in *Hawkins,* the Supreme Court rejected any "distinction between compelled and voluntary testimony." 358 US 74, 77, 3 L ed 2d 125, 128, 79 S Ct 136. See also Shores v United States, 174 F 2d 838, 841 (CA 8th Cir) (1949).

Having thus briefly touched on my views as to the pertinent principles involved in this area, I pass on to consider their application in the case at bar. If the accused's wife was injured by the forgery offenses of which he was found guilty, then obviously his conviction should not be upset, for in that event there is no privilege and thus her testi-mony was properly admitted. On this point I must part company with my associates for, as I shall endeavor to demonstrate, accused's wife was indeed an injured party.

As we indicated in United States v Strand, 6 USCMA 297, 304, 20 CMR 13:

". . . It is . . . clear that injury to a testifying spouse is not confined to physical wrong but includes injury to personal rights. See: United States v Ryno, 130 F Supp 685 (SD Calif)."

I am confident that in this instance accused's wife suffered the latter sort of injury when he forged her endorsement to her allotment checks. Indeed, curiously enough, the *Ryno* case to which we referred in *Strand,* supra, also involved forgery of the wife's endorsement to an allotment check. There the defense argued that the wife was not an injured party and that allotment allowances for dependents are compensatory in nature and come into the marriage as earnings of the husband and, therefore, the husband was dealing rightfully with his own property. In rejecting these arguments, the court noted "that the check was one issued by the Government for a special purpose which included an immediate benefit to the wife, the full enjoyment of which was interfered with in a very real sense," and that in addition to constituting a fraud on the Government, interference with a dependent's regular stipend for subsistence was certainly an interference with the wife's rights. Thus it was held the wife was a victim of her husband's forgery offense and that her testimony fell within the exception. And with respect to the claim that the husband dealt with his own property, the court further stated:

"The particular check was issued by the Government for a special purpose. It was never the purpose of a serviceman's allotment that he be thereby personally enriched. It was the purpose of the Government to provide *currently* for the regularly recurring subsistence needs of the serviceman's family." [United States v Ryno, 130 F Supp 685, 690 (SD Calif) (1955).]

**517**

Accordingly, the court held that when the defendant intercepted his wife's allotment check and signed her endorsement without authority, he committed the forgery charged.

Obviously, those holdings are inconsistent with the views herein announced by my associates, and the reason I believe they go wrong is because they utilize an erroneous predicate for their holding. I am sure reference to the whole of the statutory provisions will demonstrate the infirmity of their position. The basis of the allotment checks made out to the accused's wife may be found in 37 USC § 252, as amplified by the Dependents Assistance Act of 1950, as amended, 50 USC App §§ 2201–2216. As the majority point out, that statute contemplates that servicemen receive a basic allowance for quarters. They neglect, however, to consider the entire section. For the purpose of clarity, I set forth all the pertinent portions. Subsection 252(a) of Title 37 provides:

"*Except as otherwise provided in this section* . . . members of the uniformed services entitled to receive basic pay shall be entitled to receive a basic allowance for quarters in such amount and under such circumstances as are provided in this section." [Emphasis supplied.]

Thus the entitlement is not absolute, but is conditioned by the other subsections in which I believe the key to the issue at hand lies.

Subsection 252(f) sets the monthly quarters allowance to be paid to one in accused's status as $77.10. Subsection 252(h), however, requires that enlisted personnel make an allotment of pay. It provides in part, as pertinent to one in accused's pay grade:

"The payment of the basic allowance for quarters provided in subsection (f) of this section for enlisted members with dependents shall be made *only* for such period as the enlisted member has in effect an allotment of pay not less than the sum of the basic allowance for quarters to which he is entitled plus . . . in the case of enlisted members in pay grades E–6 and E–7, $80 *for the*

*support of the dependent or dependents on whose account the allowance is claimed*: . . ." [Emphasis supplied.]

And subsection 252(i) states:

"The allotment required by subsection (h) of this section *shall be paid to or on behalf of such dependent or dependents* as may be specified by the enlisted member concerned, subject to such regulations as the Secretary concerned may prescribe." [Emphasis supplied.]

Thus it is clear to me under the statute that the monthly $157.10 allotment checks were for accused's wife's support and were to be paid to her. Necessarily then, when accused forged her endorsements to the checks in question, she was injured by his crimes. The decision by the Court is, accordingly, clearly unsupported by the provisions of the above-recited statute and others which show the unqualified right of the wife to the proceeds from the check. See AR 37–104, paragraph 5–96, prescribed pursuant to the authority granted in 37 USC § 252(h).

And I point out that, although we did not there have occasion to discuss the matter, our reference to the *Ryno* case in United States v Strand, supra, decided nearly four years ago, indicates we were then satisfied that forgery of her allotment check constituted an injury to the wife. I still subscribe to that view but, aside from my construction of the statute, common sense suggests to me the wife has been injured. Funds received by a wife in the form of allotments are for her current use in living. Legalistic arguments can be made that she can recoup her losses by making a claim against the Government each time her signature is forged. That argument overlooks the obvious, for food, clothing, and housing accommodations cannot be purchased by contingent claims and, if the view is to prevail that an accused might be authorized to sign his wife's name in view of his asserted interest, then the Government is not obligated to repay the wife. But, in all events, while the processes of proving claims against the Government go on, the wife may have the unhappy choice

518

of applying for relief or going without the necessities of life. I know not what it takes to injure some people, but I venture to suggest that to all but the wealthy service wife, depriving them of the monthly sums due under the allotment program would not only be an injury, it would be a calamity.

Moreover, I cannot but observe in passing that the decision this day places an insurmountable obstacle before the Government and renders it impossible to prove the forgery of an allotment check by a husband over his objection. Just as in an instance where physical injuries are inflicted on a spouse in private, the payee of a check is peculiarly qualified to testify as to the facts. Indeed, as to want of authority, the payee-spouse, under all but the most improbable set of circumstances, would be the only witness who could testify. Even under the old common-law rule, an exception prevailed whereunder a man could not do physical injury to his wife in secret with complete immunity, and I wonder whether the same reasoning is not applicable under the facts of the case at bar.

I would affirm the decision of the board of review.