## UNITED STATES v. GRAHAM.

No. 29690.

United States District Court
E. D. Michigan, S. D.

Nov. 8, 1949.

Edward T. Kane, United States Attorney, Joseph C. Murphy, Assistant United States Attorney, Detroit, Mich., for plaintiff.

Robert A. Sullivan, Detroit, Mich., for defendant.

LEVIN, District Judge.

This is a motion by the defendant for a new trial after his conviction for having transported interstate a sum of money "of the value of $5,000 or more theretofore stolen, feloniously converted, or taken feloniously by fraud" in violation of Section 415 [now § 2314], Title 18 U.S.C.A. He was ably represented by counsel appointed by the court.

The motion is denied. Of the six grounds urged by the defendant as error, there is one which requires discussion, namely, that the court erred in permitting his wife to testify against him over his objection.

It is unnecessary to relate the sordid details of the swindle practised upon the woman whose testimony the defendant seeks to exclude because of the formality of a marriage ceremony. Suffice it to say, that all within a period of thirty romantic days the defendant professed his love for his victim, and by blandishments and false and fraudulent means obtained a portion of the money involved in this prosecution, inveigled her into marrying him and then after obtaining by trick the balance of her estate, deserted her within two weeks after the marriage. He was not seen or heard from again until apprehended by the authorities one year later.

The precise question is whether a wife may be permitted to testify against her husband in a criminal prosecution where a crime has been committed against her by the felonious taking of her property. The prosecution could not have proceeded without her testimony. The court is of the opinion that the wife's testimony, which did not involve confidential communications, was properly admitted.

At common law spouses were incompetent to testify against each other. There were a few recognized exceptions involving physical injury or violence to the wife. These exceptions have been enlarged by more recent judicial interpretations to include any personal wrong done to the wife of either a physical or moral nature. The reasons for the incompetency of the spouses as witnesses for or against each other have been stated by legal text-writers and courts as identity of interests with the consequent danger of perjury, and the necessity for safeguarding the security and sanctity of the marital relationship.

Prior to 1933, when Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 215, 78 L.Ed. 369, 93 A.L.R. 1136, was decided, a wife was not permitted to testify in her husband's behalf in a criminal prosecution in the Federal courts. In the Funk case the court reviewed at length the question of the competency of witnesses in criminal cases and held that in such cases the Federal courts were not bound by the rules of the common law as they existed at a specified time in the respective States, but were to apply common-law rules "in accordance with present-day standards of wisdom and justice rather than in accordance with some outworn and antiquated rule of the past." Mr. Justice Sutherland who wrote for the court said: "The fundamental basis upon which all rules of evidence must rest—if they are to rest upon reason—is their adaptation to the successful development of the truth. And, since experience is of all teachers the most dependable, and since experience also is a continuous process, it follows that a rule of evidence at one time thought necessary to the ascertainment of truth should yield to the experience of a succeeding generation whenever that experience has clearly demonstrated the fallacy or unwisdom of the old rule." 290 U.S. page 381, 54 S.Ct. page 215.

The court permitted the wife to testify because the basic grounds for her disqualification had long since disappeared and were no longer acceptable in the light of modern thought and legislation touching the subject. This decision, followed within a month by Wolfle v. United States, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617, clarified the situation in the Federal courts and overruled earlier decisions which had caused the lower courts considerable difficulty. The question whether a wife could testify against her husband in a criminal case was not before the court for decision.

But, what of the competency of a wife to testify against her husband—particularly in those cases where she is the victim of her husband's crime? As noted above, testimony concerning criminal acts against the person of the wife, at the hands of the husband, was excepted from the common-law rule. Subsequent to the enactment of the Mann Act, 18 U.S.C.A. §§ 2421–2423, Federal courts were faced with the question whether the wife would be permitted to testify against the husband in prosecutions under the Act. In dealing with this question the Circuit

Court of Appeals of the Ninth Circuit, in Cohen v. United States, 1914, 214 F. 23, 29, admitted the testimony, holding that the exception referred to is not confined to cases of personal violence "but may include cases involving a tort against the wife * * *." A petition for certiorari was denied, 235 U.S. 696, 35 S.Ct. 199, 59 L.Ed. 430. The Eighth Circuit, in Johnson v. United States, 1915, 221 F. 250, a Mann Act case, held that a wife was incompetent to testify against her husband. Thirty-four years later, in June of this year, that court was persuaded, in Shores v. United States, 8 Cir., 174 F.2d 838, 841, that the Johnson case was not in harmony "with present legal concept and common judicial view" and should be overruled.

Soon after the Funk case was decided, the Tenth Circuit in Yoder v. United States, 80 F.2d 665, was called upon to review a conviction in a white slave case based in part upon the testimony of the defendant's divorced wife. She was not the victim of the offense but testified to communications between her and the defendant which were held not to be privileged, but which left for decision the main question whether she was competent as a witness against him concerning acts that took place while she was his wife. After an analysis of the trend of modern legislation and decisions the court held the testimony admissible.

On March 21, 1946, Rule 26 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which governs the admission of evidence in the Federal courts became effective. It provides: " * * * The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

The notes prepared under the direction of the Advisory Committee make it clear that this rule was aimed at developing a uniform body of rules of evidence applicable in trials of criminal cases in Federal courts, and that the language "in the light of reason and experience" was inspired by the Funk and Wolfle cases.

The adoption of the Federal Rules of Criminal Procedure marked an important step in a lengthy struggle to improve the administration of criminal justice through judicial rule making. Since the beginning of our Government, Congress had granted to the Supreme Court a limited power to prescribe rules of practice and procedure in equity and admiralty matters, Act of Sept. 29, 1789, 1 Stat. 93, 28 U.S.C.A. § 723 [now §§ 2071, 2073]. Late in the 19th century this was extended to bankruptcy matters, Act of July 1, 1898, 30 Stat. 554, 11 U.S.C.A. § 53. In 1934 the Supreme Court was authorized to prescribe rules of civil procedure, Act of June 19, 1934, 48 Stat. 1064, 28 U.S.C.A. §§ 723b, 723c [now § 2072], which resulted in the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. Congress in 1933, Act of Feb. 24, 1933, 47 Stat. 904, 18 U.S.C.A. § 688 [now § 3772], conferred upon the Supreme Court the power to make rules of criminal appellate practice but it was not until 1940 that Congress authorized the Supreme Court to make general rules of criminal procedure, Act of June 29, 1940, 54 Stat. 688, 18 U.S.C.A. § 687 [now § 3771]; Act of Nov. 21, 1941, 18 U.S.C.A. § 689 [now §§ 3771, 3772].

In 1941 the committee appointed by the Supreme Court, which consisted of eighteen outstanding legal scholars of diversified experience, undertook the task of preparing these rules. The basic compelling considerations were stated as follows by the late George Z. Medalie, a member of the Supreme Court Advisory Committee: "The great objective of the criminal law is that justice be done. The guilty ought not to escape and the innocent must be in no danger of unjust conviction. In addition it is a tradition of Anglo-American jurisprudence that the defendant be fairly tried. The rules therefore must be drawn to safeguard the innocent, to facilitate the prosecution and speedy conviction of the guilty, without sacrificing fundamental principles of justice and fair play." Lawyers Guild Review, Vol. IV No. 3, page 2.

With such a background how shall the common-law rule be applied in this case, where a wrong is committed by a husband against his wife's property? It may be more proper to ask, shall the existing exception to the rule be interpreted to make the testimony admissible, and if the answer is in the negative, shall the exception be enlarged to admit the testimony? Courts have long been urged by legal writers to interpret the principles of the common-law realistically. "The common law doctrine is one of reason applied to experience," wrote Dean Pound in his "Spirit of the Common Law."

Once the activities of women were confined to the home and the hearth. Under the common law, marriage destroyed a woman's separate legal identity; her legal existence was merged in that of her husband, and because of this concept she incurred a general disability to act or contract as she could have done before marriage; she had no separate estate as such; in general, her contracts were void and she could not incur debts creating a personal liability against her; neither husband nor wife was competent to sue the other for negligent or wrongful injury to person or property; in short, a married woman had no standing before the law as an independent personality.

 The ancient legal doctrine of the identity of husband and wife has long become obsolete. Modern legislation and the realities of present day life have effectively destroyed what undoubtedly at best was but a legal fiction. In practically all states today a wife may own, manage and control her separate property and with few exceptions has had given to her by statute most of the contractual powers which she did not have under the common-law rule. Husband and wife may generally contract freely with each other regarding property rights, although some states still impose limitations. By virtue of the terms of a recent statute in the state where this court sits, husband and wife may be part-

ners in business. Comp.Laws 1948, § 449.6, Mich.Stat.Ann. 20.6, effective Jan. 10, 1942. The reports of our courts are replete with cases where one spouse has been held to be the agent of the other. Nine states provide for community ownership of property by husband and wife. Though the several states have not been uniform in the extent of their modifications of the common-law rules, in none of them today does a married woman remain entirely under the legal blackout created for her by the common law, and the concept of the separate estate of a married woman under her own name and control is evidenced in the so-called "Married Women's Acts." It is the purpose of these acts to secure to the wife the independent control of her own property, and the right to contract, sue and be sued, free of her husband's control, with certain limitations.

Married women constituted more than 46% of the 18,000,000 [1] women who were employed in the civilian labor force during 1948. Women own and receive a very large share of the wealth and income of the country. They are the beneficiaries of most of the life insurance in force in the United States and inherit about 65% of the property left at time of death. The aggregate financial resources in their hands from property ownership, the payment of wages, and salaries and the profits of their own businesses and investments run into vast figures.

By statute many of the states have gradually abolished restrictions as to the competency of spouses to testify against each other. See Wigmore on Evidence, 3rd Ed., Sec. 488. Many of these statutes are lacking in uniformity and it is difficult to state any general rule with respect to them. However, in twenty states all restrictions as to competency have been removed, and in those states which continue to uphold exclusion, twenty-two of them provide for an exception in the case of "a crime committed by one against the other." Three of these make express provision for the testimony of spouses where a crime has been

---

1. U. S. Dept. of Labor Bulletin, #225— Handbook of Facts on Women Workers, p. 10.

The American Woman—by Frieda S. Miller, Director Women's Bureau—U. S. Dept. of Labor.

committed by one against the person "or property" of the other. In others the "crime committed by one against the other" has been construed to include any crime, whether of violence to the person or one affecting the property of the injured spouse. In Emerick v. People, 110 Colo. 572, 136 P.2d 668, 669, the court admitted the testimony of a wife in a prosecution of the husband for obtaining her property by false pretenses, on the ground that she was the one "particularly and directly injured and affected by the alleged crime." A wife in a civil action in Michigan may testify against her husband in connection with matters involving her separate estate. Comp.Laws 1948, § 617.67, Mich.Stat.Ann. Sec. 27.916.

"The public policy of one generation may not, under changed conditions, be the public policy of another." Funk v. United States, supra. The spirit of modern legislation, not only in the United States but in England as well, which has moved steadily towards a removal of the barriers respecting the incompetency of the spouses to testify, indicates that it is the duty of the court to declare and make operative, needed extensions to the exceptions above referred to concerning the competency of a spouses's testimony.

■ With these considerations and the mandate contained in Rule 26, shall this court continue to apply a rule of law the reasons for which have long ceased to exist? Shall a married woman be permitted to own, manage and control substantial property and be restricted in her right to protection against one who would wrongfully take it from her, on the sole ground that the law recognizes him as her husband? Shall it be said that a husband is protected in the felonious taking of his wife's property by an ancient rule of the common law which permits her to testify against him only where her person is endangered or, as extended by judicial interpretation, where her morals are concerned? "The light of reason and experience" should resolve this question in the negative. Wigmore on Evidence, Sec. 2239, Vol. 8, 3rd Ed.; American Law Institute, Model Code of Evidence, Rule 216c.

Nor ought this view to be outweighed by a consideration of the basic reason for the common-law rule for the exclusion of the wife's testimony, namely, the preservation of domestic tranquility and happiness. We have here but the formalities of a marriage which was nothing but a mask and device to cover the fraud which the husband perpetrated upon his wife. When the defendant fraudulently obtained her property and then promptly deserted her, he destroyed the very basis for the rule by his own actions, and the court should penetrate the fiction that there was any marital status to preserve.

It is agreed by some legal writers [2] that the rule prohibiting husband and wife from testifying against each other has long outlived its usefulness and that in the interests of justice, the court should be permitted to hear all of the evidence. Wigmore states it thus: "This privilege has no longer any good reason for retention. In an age which has so far rationalized, depolarized and de-chivalrized the marital relation and the spirit of Feminity as to be willing to enact complete legal and political equality and independence of men and women, this marital privilege is the merest anachronism, in legal theory, and an indefensible obstruction to truth, in practice." 3rd Ed., Vol. 8, Sec. 2228, p. 232.

Some courts, however, including the reviewing court of this circuit, have been loath to accept this sweeping view of complete abolition of the privilege in the absence of affirmative action by Congress or the Supreme Court, and have preferred to sanction exceptions to the common-law rule upon principles of necessity only where "exceptional circumstances are present." Brunner v. United States, 6 Cir., 168 F.2d 281, 283; United States v. Walker, 2 Cir., 176 F.2d 564. There are exceptional circumstances in this case. Without his

2. University of Chicago Chancellor Hutchins, then Dean of Yale University Law School and Prof. Donald Slesinger then Research Assistant, indicate need for change in rules of evidence in the law of family relations in light of the changed position of American family; 13 Minn. Law Review 675.

wife's testimony, law and justice would be flouted by the defendant, and the safeguards sought to be established by the common-law rule would simply be translated into a license permitting him to steal from or commit such other wrongs against her property as might suit his fancy.