UNITED STATES, Appellee

v

JOHN C. MASSEY, Staff Sergeant,
U. S. Air Force, Appellant

15 USCMA 274, 35 CMR 246

No. 17,319

April 2, 1965

*Major Milton E. Kosa* argued the cause for Appellant, Accused. With him on the brief were *George W. Latimer, Esquire*, and *Colonel Robert O. Rollman*.

*Major Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

## Opinion of the Court

FERGUSON, Judge:

This case has been here before upon the certified issue whether the accused was entitled to a continuance in order to avail himself of the services of a particular military defense counsel. At that time, we reversed the board of review's decision that the continuance should have been granted and remanded the case for further appellate proceedings. See United States v Massey, 14 USCMA 486, 34 CMR 266. Such resulted in affirmance of accused's conviction and a sentence extending to dishonorable discharge, total forfeitures, confinement at hard labor for four years, and reduction to airman basic. We thereupon granted accused's timely petition for further review upon the issues whether:

"D. THE LAW OFFICER ERRED IN ALLOWING THE ACCUSED'S WIFE TO TESTIFY AS A WITNESS FOR THE PROSECUTION IN THE FACE OF THE ACCUSED'S ASSERTION OF PRIVILEGE[and]

"Assuming Issue 'D' is answered in the negative, is the admissibility of the testimony by the wife controlled by the offense on trial or by the lesser offense found by the court-martial?"

These questions require reiteration of some of the factors set forth in our previous opinion as well as an examination of the evidence adduced at trial. Accused was arraigned upon three counts of carnal knowledge of N, in violation of Uniform Code of Military Justice, Article 120, 10 USC § 920, and two specifications of indecent acts, one with N and the other with G, in violation of Code, supra, Article 134, 10 USC

§ 934. He was acquitted of the offense involving G and of the allegations of carnal knowledge, but was found guilty of the lesser included offense of indecent acts with N as to each such specification and of the same crime with N, as separately and originally alleged. The law officer set aside the findings of guilty as to one specification, following an appropriate motion by the defense counsel, based on the provisions of the Statute of Limitations, Code, supra, Article 43, 10 USC § 843, leaving in effect a conviction of three specifications of indecent acts with N. Accused was sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for six years, and reduction. As noted above, the period of confinement involved has since been reduced to four years.

Accused's alleged victim, N, is his daughter, and, at the time of the trial, was nine years of age. She testified to the nature of the indecent acts which accused performed on her, but denied he had carnally known her. She also declared she had reported one of the incidents to her mother in 1961 or 1962, when the family lived in Spangdahlem, Germany, and again in 1963, when the most recent incident occurred. Medical examination disclosed the absence of the hymenal membrane, but it could not be determined whether she had been sexually molested.

Thereafter, accused's wife was called as a witness, over assertion by the defense of the husband-wife privilege, and permitted to testify as to her daughter's complaints to her both in Spangdahlem and in 1963 concerning

**275**

the accused's acts. As to the earlier complaint, she indicated she and her husband had consulted an Air Force chaplain concerning the incident, but that she took no further action, except to watch her children more closely, as they were then overseas and she wished to avoid scandal. As to the incident reported to her by N in 1963, she told her daughter "that we just have to bear with it for a few more days," until her parents arrived. She "continued to live with . . . [her] husband for ten days" before complaining to the authorities, because "I wanted my father's backing." Elsewhere in her testimony she detailed a stormy marriage, characterized by ill treatment and her husband's drinking, which further deteriorated following N's initial complaint in May 1962. Nevertheless, an additional child was born of the marriage in April 1963.

Accused, testifying in his own behalf, denied his guilt of the offenses charged. He also depicted steadily worsening marital conditions, attributing "forty percent of my troubles" to his parents-in-law. He had disciplined his children strictly, particularly N and G, for lying and stealing. His security clearance was withdrawn on the basis of his family difficulties. He and his wife were of differing religions, and his mother-in-law sought to have her leave him. Inferentially, Sergeant Massey's testimony indicates the accusations by his children probably grew out of his unhappy marital state.

Mrs. Massey, recalled as a witness by the court, conceded that N had informed her "she had lied about her accusations against her father, that they were not real, but that she had dreamed it." This, however, "was in the presence of her father after he had threatened her and browbeaten her." N later repudiated her withdrawal of the accusation.

From the above, it will be seen that the record before us is not a pretty one. If N's testimony, as corroborated by that of her mother, is believed, the accused is guilty of reprehensible acts toward his own child—indeed, what defense counsel himself characterized "as nasty an accusation" as can be made. On the other hand, if the accused is to be accorded credibility, he is the blameless victim of marital discord and false charges designed to hasten the separation of the parties thereto. The question of where the truth lay was one entirely for the fact finders below, for there is ample evidence to sustain the findings of guilty. But we are required to decide whether it was meet for the Government, over the accused's timely invocation of privilege, to cast into its pan of the scales the testimony of Mrs. Massey in order to corroborate that of her daughter.

The basic foundation of the husband-wife witness privilege—as opposed to that involving confidential communications—in military law is found in the Presidential prescription of the pertinent rule of evidence pursuant to Code, supra, Article 36, 10 USC § 836:

"Husband and wife are competent witnesses in favor of each other. Although husband and wife are also competent witnesses against each other, the general rule is that both are entitled to a privilege prohibiting the use of one of them as a witness (sworn or unsworn) against the other. This privilege does not exist, however, when the husband or wife is the individual or one of the individuals injured by the offense with which the other spouse is charged, as in a prosecution for an assault upon one spouse by the other, for bigamy, polygamy, unlawful cohabitation, abandonment of wife or children or failure to support them, for using or transporting the wife for 'white slave' or other immoral purposes, or for forgery by one spouse of the signature of the other to a writing when the writing would, if genuine, apparently operate to the prejudice of such other." [Manual for Courts-Martial, United States, 1951, paragraph 148e.]

We recently had occasion to examine the fabric of this privilege in United States v Moore, 14 USCMA 635, 34 CMR 415. There, we held accused's wife, though clearly competent to testify as to assaults by her husband upon

her person, could not be compelled to do so. In reversing, the Chief Judge declared, for a unanimous Court, at page 636:

". . . The rule [of privilege] is founded upon the venerable and ancient policy of the state to avoid possible destruction of the marital bond by pitting a wife against a husband, in a trial in which his liberty is at stake. It is based, said the Supreme Court of the United States, upon the 'persistent instincts of several centuries'; and the Court rejected a Government plea to abandon the rule as inappropriate in a criminal trial in present-day society. Hawkins v United States, 358 US 74, 79, 3 L ed 2d 125, 79 S Ct 136 (1958)."

The Court then pointed out that, considering "the equivocal language of the Manual provision; *the illustrative nature of its definition of offenses outside the scope of the privilege; and the uncertain need for, or desirability of, a substantially different rule of evidence for the military courts, we are persuaded that the Manual does not create a rule of law* . . . [but] *merely comments on the rule prevailing in the Federal courts.*" (Emphasis supplied.)

The adoption by the President of the ordinary Federal rule regarding the husband-wife privilege is in accord with the Congressional directive that he, "so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts." Code, supra, Article 36, 10 USC § 836. Cf. United States v Smith, 13 USCMA 105, 32 CMR 105. And the wisdom of this policy cannot be doubted, for, except where considerations peculiar to the armed services are involved, there is thereby created an integration between the administration of its criminal justice and that in the ordinary Federal courts which renders the mode of accused's trial and punishment dependent upon the nature of his culpability rather than upon the type of tribunal before which he is arraigned. Cf. United States v Moore, supra.

Turning to the development of the rule in the Federal system, the reluctance of the Federal courts to narrow its application is at once apparent. Originally, in Stein v Bowman, 13 Peters 209 (US 1839), the Supreme Court, recognizing the common-law ban on husband and wife testifying either for or against each other, pointed out that it did not apply where the husband commits an offense against the person of his wife. *Id.*, at page 223. Thereafter, the common-law rule of incompetency was modified to permit one spouse to testify in favor of the other in Federal criminal proceedings. Funk v United States, 290 US 371, 78 L ed 369, 54 S Ct 212 (1933). It has since been further evolved, Griffin v United States, 336 US 704, 93 L ed 993, 69 S Ct 814 (1949), and Lutwak v United States, 344 US 604, 97 L ed 593, 73 S Ct 481 (1953), "until it has now become simply a privilege of the criminal defendant to prevent his spouse from testifying against him." Concurring opinion, Mr. Justice Stewart, Hawkins v United States, 358 US 74, 3 L ed 2d 125, 79 S Ct 136 (1958). It has been further held that the husband's privilege is inapplicable in prosecutions for prostituting his wife, in violation of the White Slave Traffic Act, 18 USC § 2421, as such constituted a " 'shameless offense against wifehood.' " Wyatt v United States, 362 US 525, 527, 4 L ed 2d 931, 80 S Ct 901, 903 (1960). An opposite conclusion was reached when the wife was a mere witness as opposed to being the "victim" in such a case. Hawkins v United States, supra.

The foregoing mark out the utmost limits of the development in the Supreme Court of the right to exclude one's spouse's testimony in a criminal prosecution. Over the years, it has swung from an absolute prohibition of the appearance of the spouse as a witness either for or against her defendant-husband, to ability to appear for him in any case and the existence of a privilege—on the part of both the witness-spouse and the defendant-spouse—to exclude testimony against the defendant. Funk v United States, supra; Hawkins v United States, supra.

But the privilege of the defendant-spouse is never available to him when his offense involves "violence upon her person," Stein v Bowman, supra, at page 222, or the "'shameless offense against wifehood,'" Wyatt v United States, supra, at page 527. In short, our highest Court has refused "to subscribe to the idea that an exclusionary rule based on the persistent instincts of several centuries should now be abandoned," although it has not foreclosed "whatever changes in the rule [which] may eventually be dictated by 'reason and experience.'" Hawkins v United States, supra, at page 79. Compare Rule 26, Federal Rules of Criminal Procedure; Wolfle v United States, 291 US 7, 78 L ed 617, 54 S Ct 279 (1934).

Difficulties arise, not in connection with the general application of the husband-wife privilege, but in determining whether a particular crime constitutes an offense against the wife. The decisions of the Supreme Court set out above indicate the complexity of the problem, and the other Federal courts have been equally confronted with the need to decide it under the mandate of Rule 26, supra.[1] Thus, it has been indicated that the Government was not entitled to call defendant's wife as a witness where the charge was one of fraudulent concealment of a bankrupt's assets. Bisno v United States, 299 F2d 711, 721 (CA 9th Cir) (1961). The same result followed, when defendant was tried for bank robbery, Mills v United States, 281 F2d 736, 739 (CA 4th Cir) (1960), and for a mail offense, Brunner v United States, 168 F2d 281 (CA 6th Cir) (1948). And where defendant was alleged to have fraudulently obtained a pension as a veteran's widow, it was held to be prejudicially improper to deny her claim of privilege against her husband's testimony. Jackson v United States, 250 F2d 897 (CA 5th Cir) (1958).

Similarly, when accused was alleged to have transported in interstate commerce monies obtained through fraudulent and bigamous marriages with various women, his lawful wife, mulcted of her estate in the same manner, was held subject to the privilege, as she "was not the victim of the frauds for which the defendant was being tried . . . [and] her testimony is only corroboratory or confirmatory of an offence against another person." United States v Walker, 176 F2d 564 (CA 2d Cir) (1949). We shall have occasion to refer at length to the *Walker* decision below.

On the other hand, it has been pointed out an "act against the wife harmful to her morals" is without the privilege as a personal wrong against her. Hayes v United States, 168 F2d 996 (CA 10th Cir) (1948). So also, in United States v Ryno, 130 F Supp 685 (SD Calif) (1955), the learned District Judge concluded the defendant-spouse had no basis to invoke the privilege upon an allegation that he had forged his wife's name to a Government allotment check when it appeared he had abandoned her and was cohabiting with another woman, who had borne him two children. And in United States v Williams, 55 F Supp 375 (D Minn) (1944), anticipating the decision in Wyatt v United States, supra, the defendant's subjection of his wife to acts of prostitution was said to be of such moral injury to her as to be "the same, in practical thinking, as an act of personal violence." *Williams*, supra, at page 377. Finally, one District Court extended the inapplicability of the privilege to the offense of transportation of funds stolen from the wife, holding her testimony was not barred "where a crime has been committed against her by the felonious taking of her property" following a marriage entered into for that purpose. United States v Graham, 87 F Supp 237 (ED Mich) (1949). Cf. Lutwak v

[1] We place to one side Congressional elimination of the husband-wife privilege in specified cases. See, for example, 8 USC § 1328, and Act of March 3, 1887, Chapter 397, 24 Stat 635, 28 USC § 633 (1940 ed), the latter, which, though no longer in the Judicial Code, has acquired the force of a common-law exception to the rule, permitting testimony by a spouse in bigamy cases. See United States v Wise, 10 USCMA 539, 28 CMR 105.

United States, United States v Walker, both supra.

From the foregoing, it will be seen that Federal interpretation of the exception to the defendant-spouse's privilege to exclude the testimony of the witness-spouse has been limited to offenses which may be said directly to affect her interests, *i. e.*, of which she is the victim. Except for United States v Ryno and United States v Graham, both supra, decided before the Supreme Court's discussion of the problems involved in Hawkins v United States, supra, it would also appear that the cases have dealt only with injuries to her personally rather than to matters affecting her property. And, indeed, United States v Graham, supra, may be explicable solely on the basis of the fraudulent marriage there involved. Lutwak v United States, supra. In any event, we have not found, nor has there been called to our attention, any Federal cases denying the defendant his privilege on the basis either that his offense constituted only a violation of the marital bond or affected a child born thereof.

Our own decisions have formerly allowed a more liberal scope to the spouse-injury exception to the privilege. We noted its existence at an early date in our history. United States v Richardson, 1 USCMA 558, 4 CMR 150. Thereafter, in United States v Strand, 6 USCMA 297, 20 CMR 13, the Court, relying in part on United States v Ryno, supra, held accused's wife competent to testify upon a charge of using the mails to defraud her of her marital benefits by leading her to believe he was deceased. Such, we said, seemed "to be sufficient to establish an abandonment [of the wife], and thereby [to] bring the case within the exception," which "is not confined to physical wrong but includes injury to personal rights." United States v Strand, supra, at page 304.

In United States v Leach, 7 USCMA 388, 22 CMR 178, a divided Court affirmed accused's conviction of wrongful cohabitation and adultery, despite receipt of his wife's testimony against him. Judge Latimer, relying upon the enumeration of wrongful cohabitation in the Manual's discussion of the exception to the privilege, the comparability of adultery to that offense, and the "mental suffering [of the witness-spouse] arising from violations of the marriage relationship" concluded such constituted an injury to accused's wife and that "no privilege is available when the crime of adultery is the alleged offense." *Leach,* supra, at page 397. In any event, based on the other evidence, he found no prejudice as accused's "wife's testimony was at best cumulative on a point which was not contested at trial." The author of this opinion, concurring in the result, agreed that "the wife's testimony did not prejudice the accused" and, taking the Manual's exposition of examples regarding the nature of the injury to her as governing, joined in holding adultery to wipe out the defendant's privilege. Chief Judge Quinn, concurring and dissenting, advanced the view that the Manual rule was but a codification of the ordinary Federal rule and that adultery was not an injury to the spouse-witness which removed accused's privilege. Compare United States v Moore, supra.

There can be no doubt that the Court has since reexamined its earlier broad language regarding the exception to the husband-wife privilege, in light of the decision in Hawkins v United States, supra. Thus, in United States v Wooldridge, 10 USCMA 510, 28 CMR 76, we distinguished the holding in United States v Ryno, supra, and held that a wife was not a competent witness against her husband upon a charge that he forged her signature to a dependency allowance check. See also United States v Wise, 10 USCMA 539, 28 CMR 105, wherein we also noted that the Manual, supra, in listing examples of such "injuries" (including forgery) was merely illustrative, rather than regulatory. Cf. United States v Leach, supra, concurring opinion.

And in United States v Parker, 13 USCMA 579, 33 CMR 111, we concluded that sodomy by the accused with a third party was not an injury to the wife which permitted her testimony to be received over his invocation of the

**279**

privilege. In so concluding, we declared, at page 586:

"Our position is consistent with the approach of the Supreme Court. *That there is reluctance by that tribunal to enlarge the offenses included in the exception is well illustrated by the two most recent decisions in that Court.* See Hawkins v United States, supra, and Wyatt v United States, 362 US 525, 4 L ed 2d 931, 80 S Ct 901 (1960). We point out the following limiting language in the latter case, at 362 US 351: 'Again, we deal here only with a Mann Act prosecution, and intimate no view on the applicability of the privilege of either a party or a witness similarly circumstanced in other situations.' See also the language of Mr. Chief Justice Warren in his dissent in *Wyatt*, 362 US at page 535, as to the powers of Federal courts to interpret the common-law principles of evidence 'in the light of reason and experience' (Federal Rules of Criminal Procedure, Rule 26, United States Code, Title 18), as contrasted with the legislative power of the Congress." [Emphasis supplied.]

Finally, as we have set out above, in United States v Moore, supra, we rejected the notion implicit in our earlier *Leach* decision that the Manual provision was intended to create a new and different interpretation of the privilege in military courts and found it to be an intention to record for application in the armed forces—consistently with the Congressional purpose in enacting Code, supra, Article 36—the rule and exception thereto as applied in the ordinary Federal courts. It is apparent, then, that we have turned from a broad and unfettered approach to the exception of spousal injuries in the invocation by an accused of his exclusionary privilege to a stronger emphasis on the rule itself, with its construction being guided, as in the Federal courts, by the " 'principles of the common law as they may be interpreted . . . in the light of reason and experience.' " Hawkins v United States, supra, at page 76; Rule 26, supra.

Turning to the record before us, we reiterate that our attention has been called to no Federal case which has held the wife to be injured by her husband's carnal knowledge of their offspring. The implication in United States v Richardson, supra, is that such is not an offense which would justify the wife's testimony against her husband. And, as in United States v Parker, supra, where sodomy with a third party was involved, the mere fact that the crime is an offense against the marital relationship, is reprehensible, and condemned by every right thinking person, does not cause it to fall within the exception of spousal injury. The applicable distinction, we think, is clearly shown by the differing results in Hawkins v United States and Wyatt v United States, both supra. In the former, the privilege was allowed, as the wife was only a witness to her husband's trafficking in other unfortunates. In the latter, it was denied, for the wife herself was exploited in "this 'shameless offense against wifehood.' " *Wyatt*, supra, at page 527.

The Government nonetheless argues our holding in United States v Leach, supra, that a wife was a proper witness against her husband upon charges of adultery and wrongful cohabitation, necessitates the conclusion that the spouse here had no privilege to assert against her testimony. It reasons that carnal knowledge of the daughter necessarily involved an adulterous connection which, as in *Leach,* supra, constituted an injury to the wife. The contention misses the mark, for Massey is not charged with adultery, nor is it a lesser included offense under the allegations before us. And it is clear that his privilege is dissipated only when the "prosecution [is] for a crime or criminal injury against" his spouse. 97 CJS, Witnesses, § 101.

Thus, in State v Woodrow, 58 W Va 527, 52 SE 545 (1905), where accused was indicted and tried for the murder of his child, it appearing that the fatal bullet also wounded his wife, reversal was ordered for the refusal of the trial court to permit the defendant-husband to invoke his privilege against receipt

of her testimony. There, the court declared, at page 546:

". . . An enormous wrong this murder was to the mother in a moral point of view, in an emotional point of view, in a sentimental point of view, in a pathetic point of view, under emotions of the heart which move human beings, owing to the relation of mother and child. We are apt to consider this terrible crime as a greater one against the mother than to any other living human being. Still, in a physical point of view, the homicide did not touch the person of the wife, but was only a crime against her as one member of the community—I mean in the eye of the law. Remember that Woodrow was tried for killing the child, not for shooting his wife. On a trial for shooting his wife she could, under the exception stated, give evidence against her husband, and could prove, if material, not only the shooting of herself, but also the shooting of the child, as part of the res gestae; but on his trial for killing the child the fact that the one ball did violence to both mother and child does not alter the case. The homicide of the child is one distinct crime; the shooting of the mother another distinct crime. The close connection of the two in time and circumstances does not blend the results of the ball, and make the killing of the child a personal or corporeal violence to the mother. To come under the exception the crime must be against the mother in a legal point of view."

And, again, in United States v Walker, supra, the Court ordered another trial when it appeared that accused's wife · had been permitted to testify against him upon an indictment for transporting stolen monies in interstate commerce which had been obtained by the device of entering into fraudulent marriages with other women. Judge Learned Hand stated, for the court, at page 568:

"We do not forget that a wife from the earliest times was competent to testify against her husband, when the crime was an offence against her person; and we have ourselves extended the exception to the crime of transporting her as a prostitute in interstate commerce, as has the Tenth Circuit. The same exception probably extends to the privilege against the admission of confidential communications. *The case at bar is not, however, within this exception, for Clara Duerr Walker was not the victim of the frauds for which the defendant was being tried.* The basis of the exception has always been its 'necessity'; for it was argued that, when the wife was the victim, the prosecution must fail without her testimony. That is not true when her testimony is only corroboratory or confirmatory of an offence against another person, even though it was an offence of the same character as that from which she has herself suffered." [Emphasis supplied.]

In light of these authorities, we are satisfied that it is the offense charged against the accused, or a lesser degree thereof, which must govern the issue before us, and not the fact that evidence in proof thereof tends to establish also the commission of a separate and distinct offense against the spouse. Our decision in United States v Leach, supra, therefore, does not control the question presented, and we look to other authorities.

Lacking direct Federal precedent for the situation here presented, we nevertheless find, in turning to other sources, that the great weight of authority among State jurisdictions holds no injury to the wife is involved, in the sense of the exception to the privilege, when the accused's offense is one against their children. Thus,

"At common law and in the absence of statutory modification, one spouse may not testify against the other in the latter's prosecution for a criminal offense against the children or both or of either." [97 CJS, Witnesses, § 104.]

In Toth v State, 141 Neb 448, 3 NW2d 899 (1942), the defendant's privilege was held applicable upon his trial for

281

incest. And see Annotations, 4 ALR 1069, 35 ALR 138, 82 ALR 644, and 38 ALR2d 567. To the same effect, see Calloway v State, 92 Tex Crim 506, 244 SW 549, 552 (1922), and cases there cited. So also in People v Gordon, 100 Mich 518, 59 NW 322 (1894), murder of the defendant's child was considered not to be an offense which permitted his wife to testify against him. See also Grier v State, 158 Ga 321, 123 SE 210 (1924). And in Fairley v State, 225 Miss 371, 83 So 2d 278 (1955), the rape of defendant's daughter was held not to justify evidence of receipt by his wife of the victim's first complaint. Cf. Pearson v State, 97 Miss 841, 53 So 689 (1910), and Garner v State, 76 Miss 515, 25 So 363 (1899). The same result was reached in State v Goff, 64 SD 80, 264 NW 665 (1936), as defendant's sexual connection with his daughter was not " 'a crime committed by one [spouse] against the other.' " And see State v Burt, 17 SD 7, 94 NW 409 (1903); State v Damm, 62 SD 123, 252 NW 7 (1933), 104 ALR 430; and Norvell v State, 149 Tex Crim 213, 193 SW2d 200 (1946).

These authorities, consisting as they do of the distilled reason and experience of many years in many jurisdictions, convince us that the proper approach to consideration of whether an offense charged against one spouse injures the other depends not upon the outrage to her sensibilities or a violation of the marital bonds, but upon some direct connection with her person or property. Almost any crime by one of the spouses can be said to affect the nature and status of the regard of the parties to the marriage one for the other. Cf. Bassett v United States, 137 US 496, 34 L ed 762, 11 S Ct 165 (1890). But if the exception to the privilege is not limited to a direct invasion of the wife's rights, the rule will soon be judicially eliminated. Cf. Hawkins v United States, supra; United States v Parker, supra.

As the cited cases indicate, judicial reason and experience place the offense

involved here outside the exception to the rule. Toth v State, Fairley v State, State v Goff, Norvell v State, all supra. In consequence, we conclude it was error for the law officer to permit accused's wife to testify against him.

Under the circumstances here presented, the error was also prejudicial. This was no mere technical invasion of the privilege, as occurred in United States v Leach, supra. The entire trial was a contest between the accused's credibility and that of his daughter, to whom support was directly offered by the wife's testimony as to her fresh complaints. See Fairley v State, supra. In addition, the spouse was permitted to relate other actions which she took regarding the accused and to cast doubt upon his entire testimony by her depiction of their marriage and his behavior therein. Finally, when it was conceded the daughter had withdrawn her accusations and stated she had "dreamed it," the wife was utilized to rehabilitate this chief witness for the Government by declaring that her daughter had been browbeaten and threatened by the accused until she had, in sheer desperation, sought surcease in an admission in his presence that she had been lying. This is, as we have noted, a most serious case, but it remains one which essentially presented only a question of fact for the court members and, as did the Supreme Court in Hawkins v United States, supra, "after examining the record we cannot say that her testimony did not have substantial influence on the jury. See Kotteakos v United States, 328 US 750, 764, 765." Id., at page 79. In light of the wife's testimony as depicted in this record, there is no room for invocation of the doctrine of harmless error. Cf. Code, supra, Article 59(a), 10 USC § 859. Accordingly, we reverse.

In sum, then, we hold that the offense of carnal knowledge, even when incestuous, is not a direct injury to a spouse, which causes her testimony to fall without the accused's properly invoked privilege. In order to justify elimination of that shield to the marital union, there must be something more than conduct which abuses its privileges and

responsibilities; there must be some direct, palpable invasion of, or injury to, the interests of the witness. It is the privilege, not the exception thereto, which has maintained its vitality throughout the centuries. Hawkins v United States, supra. And while we cannot set out with exactitude the metes and bounds of the exception, we, in applying the common-law principle "in the light of reason and experience," seek something more than the reprehensibility of accused's misconduct and the outraged sensibilities of his wife. United States v Parker, supra. In view of our action, there is no need to inquire with respect to the other granted issue.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

I have long advocated and, therefore, have no quarrel with the general exclusionary rule advanced in the principal opinion. See my dissent in United States v Leach, 7 USCMA 388, 22 CMR 178. But I disagree emphatically with the application of the rule to this case.

The Manual for Courts-Martial recognizes that the exclusionary rule does not apply if the witness-spouse is "the individual or one of the individuals injured by the offense." An injury may be suffered directly or indirectly. The Manual is not clear as to, and I need not attempt to explore, the extent to which an injury to a third person by the defendant-spouse is an indirect injury to the witness-spouse so as to deprive the defendant of the right to invoke the testimonial privilege. Unmistakably, however, the Manual contemplates that an injury perpetrated by the defendant-spouse upon a child of the marriage is an injury to the witness-spouse. Thus, included in the enumeration of examples of offenses to which the exclusionary rule does not apply are "abandonment of wife or children" and the "failure to support them." Manual for Courts-Martial, United States, 1951, paragraph 148e. The Supreme Court of the United States has similarly recognized the position of the child in the formulation of the spousal privilege. In delineating the reason for the rule, the Court did not confine itself to the relationship between husband and wife. On the contrary, it observed that the privilege is predicated upon a desire to "foster *family* peace" which benefits "husband, wife and *children*." Hawkins v United States, 358 US 74, 77, 3 L ed 2d 125, 79 S Ct 136 (1958). (Emphasis supplied.)

Family peace is as much disturbed when a spouse injures a child as when one spouse injures the other. To use the illustration of the Manual, abandonment of a child by a spouse results in consequential injury to the other by imposing sole responsibility for the care, upbringing, and support of the child, in place of the shared responsibility of both parents in the united household. In like manner, when one parent strips the skin from a child by a brutal and unjustified assault, the consequential injury to the interests of the innocent parent may be no less than the harm suffered in a direct assault upon the person of that spouse. A number of State courts have so held.

In O'Loughlin v People, 90 Colo 368, 10 P2d 543, 546, 547 (1932), the wife was tried for the murder of her child. Under a statute making the exclusionary rule inapplicable when the offense is "committed by one spouse against the other," the Colorado Supreme Court held the husband could testify against the wife. In pertinent part, it said: "When a spouse is charged with a crime involving a violation of the marital status such as the heinous crime here disclosed, the reason for the rule and its protection are annihilated. . . . [I]t must necessarily and logically follow that the murder by one spouse of the other's child is also a crime committed by one spouse against the other." The Wyoming Supreme Court has held that a wife can testify against her husband in a prosecution for the rape of their minor daughter. Chamberlain v State, 348 P2d 280 (1960). In State v Kollenborn, 304 SW2d 855 (1957), the Missouri Supreme Court sustained a trial court ruling admitting the testi-

mony of the wife against the defendant in a prosecution for mistreatment of their minor child. Part of the Court's opinion merits quotation:

". . . We hold that every reason of public policy and true necessity which permits the wife to so testify in the event of a personal injury to herself, applies equally here. . . . What is not good sense should not be the law." [*Id.*, at page 864.]

There is yet another reason to sustain the wife's testimony in this case. In United States v Moore, 14 USCMA 635, 641, 34 CMR 415, we pointed out that the privilege of the defendant-spouse to exclude the testimony of the witness-spouse is based on the principle that "public policy favors the maintenance of the family relationship." When that relationship has been so far disrupted that there is no reasonable possibility for continuation of a family union, application of the privilege cannot maintain the family. Adherence to the rule in such a case does not serve the public interest; it stultifies it. We acknowledged as much in the *Moore* case by observing that "enforcement of the public policy for its preservation . . . [may] no longer [be] justified," if the marriage has deteriorated beyond the point of regenesis. *Id.*, at page 642.

Judge Learned Hand has argued that short of actual divorce it cannot be said that a "marriage . . . [is] so far wrecked that there is nothing to save." United States v Walker, 176 F2d 564, 568 (CA 2d Cir) (1949). His view did not go unchallenged. It was rejected by Judge Clark in the *Walker* case; and it has been rejected in at least two Federal district courts. In United States v Graham, 87 F Supp 237, 241 (1949), the United States District Court for the Eastern District of Michigan held it could "penetrate the fiction that there was any marital status to preserve," to allow the wife to testify against the husband in a prosecution for transporting stolen money in interstate commerce. See also United States v Ryno, 130 F Supp 685 (SD Cal) (1955), affirmed on other grounds, 232 F2d 581, 584 (CA 10th Cir) (1956). The Supreme Court of the United States

has also exploded the fiction of a legal marriage when the evidence showed that the relationship of husband and wife did not exist in fact. Lutwak v United States, 344 US 604, 97 L ed 593, 73 S Ct 481 (1953). In addition, the basis for Judge Hand's conclusion, namely, that an inquiry into the marital relationship would "introduce a collateral inquiry likely to complicate the trial seriously," is not well-founded. Many times in a criminal case the trial judge may be called upon to hold a separate hearing on a defense objection to the admissibility of evidence. Such hearing is standard, for example, on an objection to the admissibility of evidence on the ground of illegal search and seizure. See United States v Weaver, 9 USCMA 13, 18, 25 CMR 275. It is commonplace as to the preliminary showing of the voluntariness of a confession. See United States v Dicario, 8 USCMA 353, 24 CMR 163. A substantially similar preliminary hearing is also required to establish the competency of a person to be a witness. See United States v Hurt, 9 USCMA 735, 776, 27 CMR 3. No difficulty is experienced in these areas, and I see no cogent reason suggesting greater complication and greater difficulty because the preliminary issue is the nature of the relationship between the witness and the accused. Certainly, trial judges in the Federal courts who have considered the specific question have had no apparent difficulty. United States v Graham, supra; United States v Ryno, supra.

Rules of evidence should be interpreted "in the light of reason and experience." Rule 26, Federal Rules of Criminal Procedure; Funk v United States, 290 US 371, 78 L ed 369, 54 S Ct 212 (1933). Divorce ends the testimonial privilege because there is then no longer any family to preserve. Yet, we know that some divorced couples remarry. That bare possibility, however, does not justify application of the rule to exclude the testimony of a divorced witness-spouse. It is barely possible that a genuine family relationship may be recreated from the lifeless ashes of a dead marriage. The refusal of the witness-spouse to testify may

perhaps indicate that, if given a chance, the possibility might ripen into fact. See United States v Wooldridge, 10 USCMA 510, 28 CMR 76; cf. United States v Moore, supra. But if the witness-spouse is willing, even eager, to testify, the possibility of reestablishing the family relationship is no greater than the possibility of the remarriage of a divorced couple. Reason and experience then compel the conclusion that the family union is as irreparably ruptured as if the parties had a legal divorce. I agree fully with District Judge Levin in the *Graham* case, supra, at page 241, that when the surrounding circumstances demonstrate the marriage is extant in law but a "fiction" in fact, the court should "penetrate" the fiction, and allow one spouse to testify against the other.

The evidence in this case leaves no doubt that the marital relationship between the accused and his wife was terminated in fact. Their differences spanned a number of years. Despite recourse to the chaplain, their relationship steadily deteriorated. After filing a complaint against the accused's conduct, Mrs. Massey and the children left the marital home. At that time she was pregnant, but when the child was born she refused to tell the accused. The record demonstrates that, for all practical purposes, there was no possible likelihood of any viable family relationship between the accused and his wife. I would, therefore, sustain the law officer's ruling admitting her testimony.