Judge STUCKY
delivered the opinion of the Court.
We granted review to consider whether an accused may invoke the spousal confidential communications privilege and thereby prevent his wife from testifying to his admission to committing adultery. We hold that he may not and affirm the court below.
I.
Appellant, who was then stationed at Camp Lejeune, North Carolina, married DN in August 1999. In November of that year, DN returned to Idaho to finish high school. Soon after she left, Appellant met a fifteen-year-old girl, AM. AM lived in a trailer park where Appellant visited friends.
Appellant and AM developed a romantic and sexual relationship. They engaged in sexual intercourse approximately forty times, in several locations, between November 1999 and early 2000. Throughout the affair, she knew he was married and that his wife was in Idaho. She told him she was fifteen years old.
In April 2000, DN returned from Idaho. After experiencing marital difficulties, she confronted Appellant on Christmas Day 2000. He first denied, but then confessed to his affair with AM. He told DN that he had made a mistake, but loved her and wanted to salvage their marriage.
*417 At his special court-martial, Appellant filed a motion in limine, asserting the marital communication privilege over this conversation. The military judge denied the motion, ruling that adultery was an offense against the spouse within the meaning of Military Rule of Evidence (M.R.E.) 504(c)(2)(A) and, therefore, Appellant could not prevent his wife from testifying to the contents of the conversation.
Contrary to his pleas, the military judge convicted Appellant of one specification of carnal knowledge, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2000), and one specification of adultery, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000). Appellant was acquitted of one specification of sodomy with a child under the age of sixteen, and one specification of sodomy. Article 125, UCMJ, 10 U.S.C. § 925 (2000). The sentence adjudged by the court-martial, and approved by the convening authority, consisted of a bad-conduct discharge, confinement for four months, forfeiture of $600 pay per month for four months, and reduction to the lowest enlisted grade. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence. United States v. Taylor, 62 M.J. 636 (N.M.Ct.Crim.App.2006).
II.
M.R.E. 504 sets out the marital privileges applicable to trials by courts-martial. With respect to the privilege of confidential communications made during the marriage, it provides as follows: “A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law.” M.R.E. 504(b)(1). However, the privilege does not apply:
In proceedings in which one spouse is charged with a crime against the person or property of the other spouse or a child of either, or with a crime against the person or property of a third person committed in the course of committing a crime against the other spouse.
M.R.E. 504(c)(2)(A).
Appellant asserts that adultery is not “a crime against the person or property” of his wife and that therefore, the military judge erred by permitting her to testify over his objection. The Military Rules of Evidence do not define the term “a crime against the person or property of the other spouse.” Appellant implores this Court to confirm that “the proper approach to consideration of whether an offense charged against one spouse injures the other depends not upon the outrage to her sensibilities or a violation of the marital bonds, but upon some direct connection with her person or property.” United States v. Massey, 15 C.M.A. 274, 282, 35 C.M.R. 246, 254 (1965). Whether adultery is “a crime against the person ... of the other spouse” is a question of law we review de novo. See United States v. McCollum, 58 M.J. 323, 340 (C.A.A.F.2003) (deciding whether the term “child of either” under M.R.E. 504(c)(2)(A) should be construed to include a de facto child).
III.
Historically, the marital privilege involved two distinct concepts: one related to the capacity (often referred to as the competency or disability) of one spouse to testify against the other, while the other concerned confidential communications made between husband and wife during the marriage. 2 Stephen A. Saltzburg et ah, Military Rules of Evidence Manual § 504.02 (6th ed.2006). Although we are concerned with the confidential communications privilege in this case, the history of the two concepts is so intertwined as to require a discussion of both.
At common law, neither husband nor wife was competent to testify against the other. 1 Kenneth S. Broun et al., McCormick on Evidence § 66, at 318 (6th ed.2006); 2 John Henry Wigmore, Evidence in Trials at Common Law, §§ 600-601 (Chadbourn rev.1979).
This spousal disqualification sprang from two canons of medieval jurisprudence: first, the rule that an accused was not permitted to testify in his own behalf be *418 cause of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one. From those two now long-abandoned doctrines, it followed that what was inadmissible from the lips of the defendant-husband was also inadmissible from his wife.
Trammel v. United States, 445 U.S. 40, 44, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).
The spousal disqualification rule “always recognized certain exceptions founded on a supposed necessity, i.e., the presumed impossibility, in specifically defined situations, of obtaining other witnesses.” 2 Wigmore, supra, § 612 (citation omitted). Such an exception to spousal disqualification was made in both the common law and American military law for cases in which the trial was for bodily injury or violence inflicted by one spouse on the other. 1 Broun et al., supra, § 66, at 319; William Winthrop, Military Law and Precedents 335 (2d ed.1920 reprint).
In 1951, the President promulgated a new Manual for Courts-Martial to reflect the changes to military justice resulting from the enactment in 1950 of the Uniform Code of Military Justice, 10 U.S.C. §§ 800-940 (1950). Manual for Courts-Martial, United States (1951 ed.) (1951 MCM). Article 36(a), UCMJ, 10 U.S.C. § 936(a), granted the President the authority to prescribe trial procedures, “including modes of proof, ... which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal eases in the United States district courts.” 10 U.S.C. § 836(a) (emphasis added).
In the 1951 Manual, the first governing all of the armed services, the President included a chapter entitled “Rules of Evidence.” 1951 MCM chap. XXVII. It was more akin to a treatise than specific rules of evidence. He adopted the following regarding the competency of spouses to testify:
Husband and wife are competent witnesses in favor of each other. Although husband and wife are also competent witnesses against each other, the general rule is that both are entitled to a privilege prohibiting the use of one of them as a witness (sworn or unsworn) against the other. This privilege does not exist, however, when the husband or wife is the individual or one of the individuals injured by the offense with which the other spouse is charged, as in a prosecution for an assault upon one spouse by the other, for bigamy, polygamy, unlawful cohabitation, abandonment of wife or children or failure to support them, for using or transporting the wife for “white slave” or other immoral purposes, or for forgery by one spouse of the signature of the other to a writing when the writing would, if genuine, apparently operate to the prejudice of such other.
1951 MCM chap. XXVII, para. 148.e., at 277. The drafters of the Manual intended that, under this provision, the spouse of an accused could be compelled to testify “if he or she [was] the victim of the transgression with which the other spouse is charged.” Charles L. Decker et al., Legal and Legislative Basis, Manual for Courts-Martial, United States 235 (1951 ed.).
On the other hand, confidential communications between husband and wife were privileged. The person entitled to the privilege was the spouse who made the communication. Normally, such a communication could not be disclosed unless that spouse consented to disclosure or otherwise waived the privilege. However, the court could require the spouse of an accused to disclose the communication, at the accused’s request, even if the spouse was the one who made it. 1951 MCM chap. XXVII, para. 151.b.(2).
In United States v. Leach, 7 C.M.A. 388, 397, 22 C.M.R. 178, 187 (1956), a spousal privilege ease, this Court held that a wife was “injured,” within the meaning of paragraph 148.e., by her husband’s act of adultery. We interpreted the term “injured” to “embrace[ ] mental suffering arising from violations of the marital relationship.” 7 C.M.A. at 397, 22 C.M.R. at 187. Although adultery was not one of the offenses listed in paragraph 148.e., we concluded that the list was merely illustrative, not exclusive. 7 C.M.A. at 397, 22 C.M.R. at 187.
*419 Nine years later, we had another opportunity to determine the scope of the exception to the marital privilege. In Massey, the accused was charged with carnal knowledge of his own daughter. Over the accused’s objection, his wife was permitted to testify to the victim’s complaints about the abuse. 15 C.M.A. at 275-77, 35 C.M.R. at 247-49. After noting that the accused had not been charged with adultery, we indicated that “the proper approach to consideration of whether an offense charged against one spouse injures the other depends not upon the outrage to her sensibilities or a violation of the marital bonds, but upon some direct connection with her person or property.” 15 C.M.A. at 282, 35 C.M.R. at 254. We then held that:
the offense of carnal knowledge, even when incestuous, is not a direct injury to a spouse, which causes her testimony to fall without the accused’s properly invoked privilege. In order to justify elimination of that shield to the marital union, there must be something more than conduct which abuses its privileges and responsibilities; there must be some direct, palpable invasion of, or injury to, the interests of the witness.
15 C.M.A. at 282-83, 35 C.M.R. at 254-55.
In United States v. Rener, consistent with our holding in Massey, we overruled Leach and held that adultery is not an injury to the person or property of the spouse, but merely a ‘“violation of the marital bonds.’” 17 C.M.A. 65, 68, 37 C.M.R. 329, 332 (1967) (quoting Massey, 15 C.M.A. at 282, 35 C.M.R. at 254).
The President issued a new Manual in 1969. Manual for Courts-Martial, United States (1969 rev. ed.). The 1969 Manual retained the “treatise” approach of the previous Manual with regard to evidentiary matters. In paragraph 148.e., “adultery” and “mistreatment of a child of the other spouse” were added as offenses to which the spousal privilege against testifying did not apply. These additions were in direct response to this Court’s holdings in Massey and Rener. Dep’t of the Army, Pamphlet 27-2 Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition at 27-32 (1970). The drafters explained the need to depart from the holdings in Massey and Rener. The effect of Massey:
is not compatible with the needs of the military service, in which, especially overseas, large groups of military personnel and their dependents live in closely knit communities. In these communities and generally in military life, child beating and child molestation by parents cannot be tolerated and certainly should not be facilitated by a rule of evidence prescribed in the Manual.
Id. Rener was not followed because “the wife is injured by [adultery and unlawful cohabitation] which are obviously directly deleterious to the martial [sic] relationship.” Id.
During the early 1970s, the Supreme Court approved and sent the Federal Rules of Evidence to Congress for adoption. 1 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual pt. 1, at 4 (9th ed.2006). The proposed rules contained nine privileges and four rules for controlling the use of those privileges. Because significant controversy arose over these, Congress instead opted for a single rule that mandated a common-law approach to privileges. 2 Saltzburg et al., Military Rules of Evidence Manual, swpra, § 501.02[2], The Federal Rules, as amended, were signed into law on January 2, 1975. Pub.L. No. 93-595, 88 Stat. 1926 (1975); 1 Saltzburg et al., Federal Rules of Evidence Manual, supra, pt. 1, at 4-5.
A little more than three months later, this Court was asked, in the case of an accused convicted of committing sexual offenses on his own child, whether the Massey holding was still valid in light of the President’s changes in the 1969 Manual. We determined that Massey “was no longer viable.” United States v. Menchaca, 23 C.M.A. 67, 68, 48 C.M.R. 538, 539 (1974). We acknowledged that differences between the military and federal rules of evidence are allowable, that the change to paragraph 148.e. to add “mistreatment of a child” as an injury to the spouse was consistent with the rules of evidence for use in federal district courts that the Supreme Court had proposed to Congress, and that the change expressed the *420 specific intent of the drafters to overrule Massey. 23 C.M.A. at 69, 48 C.M.R. at 540.
In 1980, the President adapted the Federal Rules to military practice in the Military Rules of Evidence. 1 Saltzburg et al., Military Rules of Evidence, supra, at xv. Rather than take the common law approach to privileges approved by Congress, the Military Rules included many of the specific privileges originally proposed by the Supreme Court. The President took this approach because of the military justice system’s “dependence upon large numbers of laymen, temporary courts, and inherent geographical and personnel instability due to the worldwide deployment of military personnel. Consequently, military law requires far more stability than civilian law.” 2 Saltzburg et al., Military Rules of Evidence, supra, § 501.03 (Drafters’ Analysis).
M.R.E. 504 combined into one rule the husband-wife and the confidential marital communications privileges. For the first time, it made the exceptions to the husband-wife privilege applicable as well to the marital communications privilege. Thus, there is no marital confidential communications privilege “[i]n proceedings in which one spouse is charged with a crime against the person or property of the other.” M.R.E. 504(c)(2)(A). Although the Rule does not list specific offenses encompassed in the term “crime against the person,” the drafters provided some insight into the scope of the exceptions:
The Rule thus recognizes society’s overriding interest in the prosecution of anti-marital offenses____ The Rule is similar to 1969 Manual Para. 148 e but has deleted the Manual’s limitation of the exceptions to the privilege to matters occurring after marriage or otherwise unknown to the spouse as being inconsistent with the intent of the exceptions.
Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-40 (2005 ed.) [hereinafter Drafters’ Analysis].
In her scholarly dissent, Judge Ryan maintains that the language of the Rule itself, the deletion of the term “adultery” from the Rule as it appeared in the 1969 Manual, and the common law and Supreme Court interpretations of the marital communications privilege all support a conclusion that adultery is not a “crime against the person or property” of the spouse. We are certainly not unsympathetic to the view that in construing the language of a rule, “it is generally understood that the words should be given their common and approved usage.” McCollum, 58 M.J. at 340 (citation and quotation marks omitted).
But, there is no evidence that, in adopting M.R.E. 504(c)(2)(A), the President meant to amend, let alone jettison, those exceptions to the privilege listed in paragraph 148.e. of the 1969 Manual. Rather, the Drafters’ Analysis is strong evidence that he meant to apply the exceptions to both the husband-wife testimonial privilege and the marital communications privilege. Moreover, this reading of the Rule is consistent with the principle that testimonial privileges “must be strictly construed and accepted ‘only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.’” Trammel, 445 U.S. at 50-51, 100 S.Ct. 906 (quoting Elkins v. United States, 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)). We therefore hold that, for the purposes of M.R.E. 504(c)(2)(A), adultery is a crime against the person of the other spouse. The military judge was correct in denying Appellant’s motion in limine to assert the privilege against his wife’s testimony.
IV.
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.